UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22445

GARY BRODEN,

     Plaintiff,

v.

NCL (BAHAMAS) LTD.,
d/b/a Norwegian Cruise Line,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR TRIAL BY JURY**

Plaintiff, GARY BRODEN (hereinafter "BRODEN"), through undersigned counsel, sues

Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line (hereinafter "NCL"), and

demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1.  BRODEN seeks damages in excess of $75,000.00, exclusive of interest, costs, and

attorneys' fees.

2.  This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3.  This Court has diversity jurisdiction  pursuant to 28 U.S.C. § 1332, as the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.  Suit is filed in federal court because of the federal forum selection clause in the

passenger contract ticket issued by NCL.

5.   BRODEN is *sui juris* and is a resident and citizen of the state of Florida.

6.    NCL is a citizen of the state of Florida and the nation of Bermuda.

7.    NCL is a foreign corporation who is authorized to conduct and  who  does  conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.    NCL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a.    Operated, conducted, engaged in, or carried on a business venture; and/or

    b.    Had an office or agency; and/or

    c.    Engaged in substantial activity; and/or

    d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181, or 48.193.

9.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.    Hereinafter, the phrase, "subject area," shall include, but not be limited to, the subject front cabin door that slammed onto BRODEN, and all material and effects pertaining thereto, including the subject balcony cabin door and/or the subject front cabin door and/or other parts thereof (hereinafter, "doors" shall refer to both the front cabin door and the balcony cabin door), the wind-tunnel, the pressure, the materials that were or should have been applied, the cabin and cabin doors' design and/or visual condition, and/or any other applied material, and the surrounding area.

11.    At all times material hereto, NCL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Norwegian Escape*.

12.     BRODEN'S incident occurred on or about January 9, 2022, while he was a fare paying passenger on NCL'S vessel, the *Norwegian Escape*.

13.     At all times material hereto, NCL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in BRODEN'S incident.

14.     On or about January 9, 2022, BRODEN was leaving cabin 12716 on deck 12 in a normal and proper manner. However, unbeknownst to him, the balcony cabin door was slightly ajar, such that the wind-tunnel caused the front cabin door to suddenly slam shut onto BRODEN'S hand and fingers when he attempted to exit through the front cabin door.

15.     As a result, BRODEN suffered severe injuries, including, but not limited to, injuries to his hand and fingers, which may require lifelong care.



Exhibit A: Photograph of BRODEN'S fingers, days after the subject incident.

16.    On the same day of the incident, BRODEN sought immediate medical attention at the ship's medical center where the ship's physician administered anesthesia while on the ship, preformed a procedure while on the ship, stitched his severed fingers while on the ship, and failed to properly diagnose the injury by failing to properly diagnose the number of fractures to an unreasonable degree, causing him further injuries.

17.    At all relevant times, the dangerous and/or risk-creating conditions include, but are not limited to, the following:

a.    The unreasonable placement of the subject cabin doors, the subject cabin doorframes, and/or the subject cabin door closers, failed to prevent and/or mitigate the subject front cabin door from slamming shut onto BRODEN, and/or cabin pressure-testing failed to prevent and/or mitigate the subject front cabin door from slamming onto BRODEN.

b.    The subject front cabin door that slammed onto BRODEN was unreasonably unstable and/or had an unreasonably dangerous propensity to slam shut suddenly.

c.    The subject cabin doors and/or the subject front cabin door lacked adequate wind-tunnel resistance, lacked adequate wind-tunnel resistant treatment, and/or any such wind-tunnel resistant treatment was unreasonably poorly maintained and/or worn down and/or otherwise unreasonably dangerous such that it did not reasonably reduce the speed of the subject front cabin door.

d.    The unreasonably dangerous speed and impact of the subject front cabin door.

e.    The design of the subject area lacked adequate stability to prevent the subject front cabin door from slamming shut at an unreasonably fast speed.

f.    The unreasonably dangerous materials of the cabin doors and/or cabin doorframes, including, but not limited to, the cabin door closers, which consisted of such a design and/or structure to seriously injure any person using the front cabin door.

g.    The unreasonably unstable and insufficient cabin doors and/or cabin doorframes.

h.    The unreasonably poorly maintained cabin doors and/or cabin doorframes were inadequate for the subject area at the time of BRODEN'S incident.

i.    The contents of the subject cabin doors lacked adequate stable material.

j.    NCL failed to exercise reasonable care to make sure balcony accessible cabins were available with adequate cabin doors to withstand wind-tunnel conditions.

k.    NCL provided no reasonable parts, devices, mechanisms, and/or safeguards to prevent front cabin doors from slamming shut suddenly during passenger use (such as adequate door closers and/or other devices).

l.    The subject cabin doors and/or the subject cabin doorframes and/or the subject cabin door closers and/or parts thereof, lacked adequate visual cues to help passengers see the subject cabin doors' unreasonable configuration.

m.    The inadequate placement of the unreasonably small sticker/sign failed to warn passengers and/or failed to appear with any reasonable visibility (such as conspicuous tape/larger sticker(s)/sign(s)/coloring/other visual cues, etc.).

n.    The visual condition of the subject area was such that it was difficult for a reasonable person to see the small warning sticker/sign near the subject balcony cabin door and/or to see the dangerous condition of the area.

o.      NCL did not reasonably train crewmembers to adequately secure cabin doors and/or warn passengers to prevent such an incident.

p.      NCL did not have sufficient supervision of the subject area.

q.      Other dangerous conditions that will be revealed through discovery.

18.      Each of these dangerous conditions alone was sufficient to cause BRODEN'S incident and injuries, and BRODEN is alleging that NCL was negligent as to each of these conditions separately and not cumulatively.

19.      NCL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.      After his incident, the cabin steward expressed concern to BRODEN because the cabin steward was supposed to warn, yet failed to warn BRODEN, about the cabin doors beforehand, and NCL confronted the cabin steward about this policy to warn after BRODEN'S incident.

b.      Furthermore, BRODEN observed NCL'S crewmembers in the subject area and in the immediate vicinity, such that BRODEN reasonably infers that these crewmembers were familiar with and regularly used, observed, and tended to both the subject area and similar areas with a balcony cabin door/front cabin door configuration, and therefore were or should have been aware of the dangerous and/or risk-creating conditions thereof, and should have warned of and/or removed these conditions.

c.      Both prior to and after BRODEN'S incident, NCL installed and/or refitted substantially similar front cabin doors and/or substantially similar balcony cabin doors, on the *Norwegian Escape*, and on other ships in its fleet,

which are more stable and/or follow structural standards for cabin doors in cabins with balconies to withstand conditions typical of a voyage.

d.      NCL participated in the installation and/or design of the subject area, or alternatively, NCL accepted the area with its defects present after having been given an opportunity to inspect the ship and materials on it, such that NCL should have known of the design defects of the subject area before providing it for public use. These defects include, but are not limited to, the structural dangers outlined in paragraph 17 (a-n) of this Complaint.

e.      There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 17 of this Complaint, and NCL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for NCL to comply with or not, a fact-finder is entitled to determine, if it so chooses, that these standards/recommendations/ other guidelines show what a reasonable Defendant should have done.

f.      NCL also knew or should have known of these dangerous conditions through inspecting the subject area involved in BRODEN'S incident, and if it did not know of these dangerous conditions, this was because NCL failed to adequately inspect the subject area prior to his incident.

g.   Additional individuals suffered similar prior incidents, injured due to the same subject front cabin door and/or substantially similar front cabin doors on NCL'S ships, including, but not limited to, incidents of front cabin doors slamming onto bodily extremities.

h.   After his incident, BRODEN then noticed the inadequate placement of the sticker/sign, which was unreasonably small and hidden near the balcony cabin door (instead of applied on/near the front cabin door where the incident occurred), which was difficult to read, and was unbeknownst to BRODEN at the time of the subject incident.

i.   Moreover, NCL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

21.   The subject area and the vicinity lacked adequate safety features to prevent and/or minimize BRODEN'S incident and/or impact.

22.   These hazardous conditions were known, or should have been known, to NCL in the exercise of reasonable care.

23.   These hazardous conditions existed for a period of time before the incident.

24.   These conditions were neither open nor obvious to BRODEN.

25.   At all times relevant, NCL failed to adequately inspect the subject area and the vicinity for dangers, and NCL failed to adequately warn BRODEN of the dangers.

26.   At all times relevant, NCL had the ability to cure the deficiencies and to eliminate the hazards, but NCL failed to do so.

27.    At all times relevant, NCL failed to maintain the subject area and the vicinity in a reasonably safe condition.

28.    At all times relevant, NCL participated in the design and/or approved the design of the subject area and the vicinity involved in BRODEN'S incident.

29.    At all times relevant, NCL participated in the installation and/or approved the installation of the subject area and the vicinity involved in BRODEN'S incident.

30.    The crewmembers of the *Norwegian Escape* were in regular full-time employment of NCL and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

31.    NCL had the right to hire and fire their employees and/or agents.

32.    NCL is directly responsible and liable for NCL'S actions and the actions of its employees and/or agents.

33.    The crewmembers, including, but not limited to, the medical staff, were employees and/or actual agents and/or apparent agents of NCL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.    The crewmembers were represented to BRODEN and the ship's passengers as employees of NCL through signs, documents, and/or uniforms. The crewmembers were also paid salary and/or hourly wage by NCL, and NCL knew that the crewmembers represented themselves to be employees of NCL and allowed them to represent themselves as such. BRODEN detrimentally relied on these representations as he would not have proceeded on the subject cruise had he believed the crewmembers were not employees of NCL.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

35.    BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

36.   NCL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

38.   At all times material, NCL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with NCL, breached the duty of reasonable care owed to BRODEN and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk-creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present at the time of BRODEN'S incident.

39.   NCL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.   These risk-creating and/or dangerous conditions were caused by NCL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

41.   NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

42.   NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

43.   Furthermore, the subject area and the vicinity were also on a cruise ship in the open sea subject to numerous maritime conditions such as the ship's movement, additional wear-and-

tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

44.   NCL'S breach proximately caused BRODEN great bodily harm in that the incident that occurred was a foreseeable result of NCL'S breach.

45.   As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

46.   These losses are permanent and/or continuing in nature.

47.   BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of  his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

48.   BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

49.     NCL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

50.     This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

51.     At all times material, NCL, through its vessel, crew, agents, employees, staff, and/or representatives, who were acting in the course and scope of their employment and/or agency with NCL, breached the duty of reasonable care owed to BRODEN and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk-creating and/or dangerous conditions discussed paragraph 17 of the instant Complaint were present at the time of BRODEN'S incident.

52.      NCL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed  in paragraph 19 of the instant Complaint.

53.     Moreover, these risk-creating and/or dangerous conditions were caused by NCL'S failure to adequately maintain the subject area and the vicinity.

54.     NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

55.     NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

56.     Furthermore, the subject area and the vicinity were also on a cruise ship in the open sea subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

57.   NCL'S breach proximately caused BRODEN great bodily harm in that the incident that occurred was a foreseeable result of NCL'S breach.

58.   As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

59.   These losses are permanent and/or continuing in nature.

60.   BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of  his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## <u>NEGLIGENT FAILURE TO REMEDY</u>

61.   BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

62.   NCL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

63.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

64.   At all times material, NCL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with NCL, breached the duty of reasonable care owed to BRODEN and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk-creating and/or dangerous conditions discussed in paragraph 17 of the instant Complaint were present at the time of BRODEN'S incident.

65.   NCL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

66.   Moreover, these risk-creating and/or dangerous conditions were caused by NCL'S failure to adequately remedy the subject area.

67.   NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

68.   NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

69.   Furthermore, the subject area and the vicinity were also on a cruise ship in the open sea subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

70. NCL'S breach proximately caused BRODEN great bodily harm in that the incident that occurred was a foreseeable result of NCL'S breach.

71. As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

72. These losses are permanent and/or continuing in nature.

73. BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT IV
### NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

74. BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

75. At all times relevant, NCL owed a duty to exercise reasonable care under the

circumstances for the safety of its passengers, including BRODEN.

76.   Such duty includes, but is not limited to, the duty that NCL owes to warn passengers of any dangers that it knew or should have known were not open and obvious.

77.   Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

78.   At all times material, NCL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with NCL, breached the duty of reasonable care owed to BRODEN and was negligent by failing to warn him of the dangerous conditions discussed in paragraph 17 of the instant Complaint.

79.   Furthermore, NCL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

80.   These dangerous conditions were also created by NCL.

81.   NCL failed to ensure the dangerous conditions that passengers needed to be warned of were adequately conveyed, and NCL failed to warn BRODEN despite knowing of the dangers.

82.   These dangerous conditions existed for a period of time before the incident.

83.   These conditions were neither open nor obvious to BRODEN.

84.   NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

85.   NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

86.   Furthermore, the subject area and the vicinity were also on a cruise ship in the open sea subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique

to maritime travel, and as such were "clearly linked to nautical adventure."

87.   NCL'S breach proximately caused BRODEN great bodily harm in that the incident that occurred was a foreseeable result of NCL'S breach.

88.   As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

89.   These losses are permanent and/or continuing in nature.

90.   BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

91.   BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1

through 34, as if set forth herein.

92.   At all times material hereto, NCL owed a duty to its passengers, and in particular a duty to BRODEN, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 17 (a-n) in the instant Complaint, as well as to design and install reasonable safeguards.

93.   At all times material hereto, NCL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which BRODEN was injured into the channels of trade, and/or NCL approved of the subject vessel's design, including the design of the subject area and the vicinity.

94.   At all times material hereto, NCL manufactured, designed, installed, and/or approved of the *Norwegian Escape*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to BRODEN, to design, install, and/or approve of the subject area and the vicinity without any defects.

95.   At all times material hereto, NCL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with NCL, designed, installed, and/or approved of the subject area and the vicinity involved in BRODEN'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

96.   NCL provides design elements of the vessels to the ship builder and/or approves of design elements, which include the subject area and the vicinity.

97.   NCL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Norwegian Escape*, during the new build process.

98.   NCL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

99.   NCL has the right to inspect and reject design elements before taking possession of the ship.

100.   However, NCL permitted the dangerous conditions discussed in paragraph 17 (a-n) of the instant Complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

101.   The design flaws that made the subject area and the vicinity involved in BRODEN'S incident unreasonably dangerous were the direct and proximate cause of his injuries.

102.   NCL is liable for the design flaws of the vessel, including design flaws of the subject area and the vicinity involved in BRODEN'S incident, which it knew or should have known of.

103.   NCL failed to correct and/or remedy the defective conditions, despite the fact that NCL knew or should have known of the danger(s).

104.   NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

105.   NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

106.   Furthermore, the subject area and the vicinity were also on a cruise ship in the open sea subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

107.   NCL'S breach proximately caused BRODEN great bodily harm in that the incident

that occurred was a foreseeable result of NCL'S breach.

108. As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

109. These losses are permanent and/or continuing in nature.

110. BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of  his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF NCL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

111. BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

112. NCL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

113. The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, including the crewmembers who were in the vicinity of the subject area at the time of BRODEN'S incident, were agents of NCL for the following reasons:

      a.  They were the staff and/or employees of NCL, or were NCL'S agents, apparent agents, and/or servants; and/or

      b.  These staff, employees, and/or agents were subject to the right of control by NCL; and/or

      c.  These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

      d.  NCL acknowledged that these staff, employees, and/or agents would act on NCL'S behalf, and they accepted the undertaking.

114. NCL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 17 of the instant Complaint.

115. NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

116. NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

117. Furthermore, the subject area and the vicinity were also on a cruise ship in the open sea subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

118. NCL'S breach proximately caused BRODEN great bodily harm in that the incident that occurred was a foreseeable result of NCL'S breach.

119. As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

120. These losses are permanent and/or continuing in nature.

121. BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of  his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VII**
**VICARIOUS LIABILITY AGAINST NCL FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

122. BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

123. NCL, through the ship's medical staff (including, but not limited to, its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

124. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

125. At all times material, the ship's medical staff (including, but not limited to, its physicians and nurses), and the ship's crew, were full-time employees and agents of NCL, subject to its direction and control, who were engaged in the activity of discharging NCL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

126. NCL is estopped to deny that the ship's medical staff (including, but not limited to, its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

127. NCL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

128. NCL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

129. NCL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

130. NCL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

131. NCL'S marketing materials described the infirmary in proprietary language.

132. The ship's medical personnel were members of the ship's crew; were subject to the

ship's discipline; were required to wear the ship's uniforms; (and, in particular, the ship's physicians) who were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by NCL.

133.  NCL provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

134.  At all times material hereto, NCL, through the ship's medical staff (including, but not limited to, its physicians and nurses), as well as the ship's crew, was careless, negligent, and breached its duties as follows:

    a.  Failing to promptly provide BRODEN with proper medical and/or first aid care and attention; and/or

    b.  Failing to timely and properly diagnose and/or assess BRODEN'S condition; and/or

    c.  Failing to timely and properly attend to BRODEN, to his injuries, and to his pain; and/or

    d.  Failing to provide reasonable medical and/or first aid care; and/or

    e.  Failing to timely and properly treat and care for BRODEN; and/or

    f.  Failing to timely and properly examine BRODEN'S injuries; and/or

    g.  Failing to take proper measures to secure adequate treatment for BRODEN, including, but not limited to, unreasonably delaying taking measures to secure such proper treatment; and/or

    h.  Failing to properly bring and/or arrange for BRODEN to be brought to an emergency room within a reasonable amount of time; and/or

    i.  Harming BRODEN by failing to diagnose his number of fractures; and/or

    j.   Failing to follow the standard of care when conducting procedures; and/or

    k.   Having BRODEN remain on the ship after severing his fingers and fracturing bones; and/or

    l.   Failing to perform adequate medical procedures and/or failing to properly disembark BRODEN so that he could obtain surgery with adequate equipment to conduct a proper procedure; and/or

    m.   Failing to reasonably medically disembark BRODEN; and/or

    n.   Failing to give BRODEN proper discharge instructions.

135.   Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing.  It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

136.   Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

137.   NCL is therefore vicariously liable for all injuries and damages sustained by BRODEN as a result of the negligence of the ship's medical staff (including, but not limited to, its physicians and nurses), as well as the ship's crew.

138.   At all times material hereto, the aforementioned acts and/or omissions on the part of NCL'S ship's medical staff (including, but not limited to, its physicians and nurses), as well as the ship's crew, fell below the standard of care.

139.   The negligence of NCL'S ship's medical staff (including, but not limited to, its physicians and nurses), as well as the ship's crew, was the cause-in-fact of BRODEN'S great bodily harm in that, but for such negligence, BRODEN'S injuries would not have occurred and/or

said injuries would have been substantially lessened.

140.   The negligence of NCL'S ship's medical staff (including, but not limited to, its physicians and nurses), as well as the ship's crew, proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

141.   NCL, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

142.   As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

143.   These losses are permanent and/or continuing in nature.

144.   BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VIII**
**APPARENT AGENCY FOR THE ACTS OF THE SHIP'S MEDICAL STAFF**

145.     BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

146.     At all times material hereto, the ship's medical staff represented to BRODEN and to the ship's passengers as employees and/or agents and/or servants of NCL, in that:

a.       Medical staff wore a ship's uniform; and/or

b.       Medical staff ate with the ship's crew; and/or

c.       Medical staff was under the commands of the ship's officers; and/or

d.       Medical staff worked in the ship's medical department; and/or

e.       Medical staff used the medical equipment provided by NCL; and/or

f.       Medical staff was paid a salary by NCL; and/or

g.       Medical staff worked aboard the vessel; and/or

h.       Medical staff spoke to BRODEN as though they had authority to do so by NCL.

147.     In addition, NCL further represented to BRODEN that the vessel's medical staff were agents and/or employees of NCL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as "*Norwegian Escape's* Medical Center/our infirmary/our medical center," and through encouraging BRODEN to make use of "its" infirmary/medical center if he was in need of medical attention.

148.     Furthermore, at no time did NCL represent to BRODEN in particular, or to the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents or employees of NCL.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 27 of 33**

149. At all material times, BRODEN reasonably relied on the representations to his detriment that the medical staff were employees, and/or agents, and/or servants of NCL.

150. It was reasonable to believe that the medical staff were NCL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by NCL.

151. This reasonable reliance was detrimental because it delayed BRODEN from receiving proper medical treatment and/or BRODEN would not have gone on the subject cruise with NCL had he known that the medical staff on the ship were not NCL'S agents.

152. NCL is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

153. NCL had a duty to provide BRODEN with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide BRODEN with reasonable care under the circumstances.

154. BRODEN'S injuries were aggravated due to the fault and/or negligence of NCL through the acts of its apparent agents as follows:

    a.  Failing to promptly provide BRODEN with proper medical and/or first aid care and attention; and/or

    b.  Failing to timely and properly diagnose and/or assess BRODEN'S condition; and/or

    c.  Failing to timely and properly attend to BRODEN, to his injuries, and to his pain; and/or

    d.  Failing to provide reasonable medical and/or first aid care; and/or

e.  Failing to timely and properly treat and care for BRODEN; and/or

f.  Failing to timely and properly examine BRODEN'S injuries; and/or

g.  Failing to take proper measures to secure adequate treatment for BRODEN, including, but not limited to, unreasonably delaying taking measures to secure such proper treatment; and/or

h.  Failing to properly bring and/or arrange for BRODEN to be brought to an emergency room within a reasonable amount of time; and/or

i.  Harming BRODEN by failing to diagnose his number of fractures; and/or

j.  Failing to follow the standard of care when conducting procedures; and/or

k.  Having BRODEN remain on the ship after severing his fingers and fracturing bones; and/or

l.  Failing to perform adequate medical procedures and/or failing to properly disembark BRODEN so that he could obtain surgery with adequate equipment to conduct a proper procedure; and/or

m.  Failing to reasonably medically disembark BRODEN; and/or

n.  Failing to give BRODEN proper discharge instructions.

155.  Pain is a frequently experienced, yet oftentimes an overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

156.  As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his

household duties, loss of the value of his vacation, cruise, and transportation costs.

157. These losses are permanent and/or continuing in nature.

158. BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of  his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IX**
**ASSUMPTION OF DUTY FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

159. BRODEN hereby adopts and re-alleges each and every allegation in paragraphs 1 through 34, as if set forth herein.

160. NCL owed BRODEN the duty to exercise reasonable care under the circumstances for the safety of its passengers.

161. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

162. NCL elected to discharge this duty by having BRODEN seen by its own ship's physicians and/or other crewmembers.

163. As such, NCL voluntarily assumed a duty for the benefit of BRODEN to use

reasonable care in the provision of medical services to BRODEN.

164.  At all times material hereto, NCL was careless, negligent, and breached its duties due to the fault and/or negligence of NCL through the acts of its apparent agents by:

a.  Failing to promptly provide BRODEN with  proper  medical  and/or  first  aid care and attention; and/or

b.  Failing   to   timely  and  properly  diagnose  and/or  assess  BRODEN'S condition; and/or

c.  Failing to timely and  properly  attend  to  BRODEN,  to  his  injuries,  and  to  his pain; and/or

d.  Failing to provide reasonable medical and/or first aid care; and/or

e.  Failing to timely and properly treat and care for BRODEN; and/or

f.  Failing to timely and properly examine BRODEN'S injuries; and/or

g.  Failing to  take  proper  measures  to secure adequate treatment for BRODEN, including, but not limited to, unreasonably  delaying  taking  measures to secure such proper treatment; and/or

h.  Failing to properly bring  and/or arrange for BRODEN  to  be  brought  to  an emergency room within a reasonable amount of time; and/or

i.  Harming BRODEN by failing to diagnose his number of fractures; and/or

j.  Failing to follow the standard of care when conducting procedures; and/or

k.  Having   BRODEN   remain   on  the  ship  after  severing  his  fingers  and fracturing bones; and/or

l.  Failing  to  perform  adequate  medical  procedures and/or failing to properly disembark   BRODEN   so that he could   obtain  surgery  with  adequate

equipment to conduct a proper procedure; and/or

m.   Failing to reasonably medically disembark BRODEN; and/or

n.   Failing to give BRODEN proper discharge instructions.

165.  At all times material hereto, the aforementioned acts or omissions on the part of NCL fell below the standard of care.

166.  NCL'S breach was the cause-in-fact of BRODEN'S great bodily harm in that, but for NCL'S negligence, BRODEN'S injuries would not have occurred.

167.  NCL proximately caused BRODEN'S injuries as natural, probable, and foreseeable consequences of NCL'S negligence.

168. NCL, through its employees, to wit, the ship's medical staff, knew, or should  have known, that the medical procedures they employed violated reasonable standards of medical care.

169. As a result of NCL'S negligence, BRODEN has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, loss of physical feeling, loss of dexterity, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of capacity to perform his household duties, loss of the value of his vacation, cruise, and transportation costs.

170.  These losses are permanent and/or continuing in nature.

171.  BRODEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GARY BRODEN, demands Judgment against Defendant, NCL (BAHAMAS) LTD., d/b/a Norwegian Cruise Line, for damages suffered and costs incurred, as well as for damages and costs that he will suffer and incur in the future, as a result of his bodily injury(ies), pain and suffering, disability(ies), disfigurement, scarring, mental anguish, loss of

physical feeling, loss of dexterity, hospitalization, medical care and treatment, nursing care and treatment, loss of capacity to perform his household duties, loss of the value of his vacation and cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, GARY BRODEN, demands trial by jury on all issues so triable.

**Dated:** August 3, 2022

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Riana S. Maryanoff, Esq.**
Florida Bar No.: 1024768
rmaryanoff@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134

P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***